32 C.C.P.A. (Patents)

## ENGELBRECHT v. ROGERS.

### Patent Appeal No. 4973.

Court of Customs and Patent Appeals. Feb. 7, 1945.

Hammond & Littell, of New York City (Charles P. Pollard, of New York City, of counsel), for appellant.

Lee R. Grabill, Jr., of Wilmington, Del. (David Katz, of Chicago, Ill., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

This is an appeal by Engelbrecht from a decision of the Board of Interference Examiners of the United States Patent Office awarding to appellee, Rogers, priority of invention as to count 5 in an interference proceeding which, in the Patent Office, involved thirteen counts. The board awarded one count, No. 6, to Engelbrecht and all the others to Rogers. After the appeal was taken here, the parties stipulated that the appeal should be withdrawn as to all counts except No. 5. The appeal as to the remaining counts will therefore be dismissed.

Count 5 reads as follows:

5. New quaternary ammonium compounds having the formula:

$$R\text{--}CO\text{--}N\text{--}CH_2\text{--}N(tert)\text{--}X$$
$$|$$
$$CH_2$$
$$|$$
$$R\text{--}CO\text{--}N\text{--}CH_2\text{--}N(tert)\text{--}X$$

in which R is an aliphatic radical of at least 7 carbon atoms, X is a halogen and N(tert) is an aliphatic tertiary amine.

The invention of the count relates to quaternary ammonium compounds of a particular formula, for use as a water repellent for treating textiles.

Neither party took testimony. The interference is between the applications of the respective parties, Engelbrecht's filed April 18, 1940, and Rogers' filed July 27, 1939. When the interference was set up and during the motion period, count 5 was proposed by Engelbrecht, without opposition on the part of Rogers. There was no motion to dissolve, and the question of the right of Engelbrecht to make the count in his domestic application here involved has never been challenged. Engelbrecht's domestic application contains the disclosure of two German applications, No. 80,-309, filed April 22, 1939, and No. 80,329, filed April 24, 1939, which will be respectively referred to hereinafter as the first and second German applications.

According to the decision of the board, Engelbrecht must there have relied upon the disclosures in both of his foreign applications for a reduction to practice of the invention of the numerous counts there involved. Here he relies solely upon the first German application as a proper basis for a reduction to practice of the invention of count 5. The issue here is confined to the question whether or not the first German application affords an adequate disclosure; and in order for Engelbrecht to succeed in his contest for priority, it must be shown that said first German application adequately discloses the invention of the count so as to constitute a reduction to practice.

In urging that the first German application is adequate for the constructive reduction to practice of count 5, Engelbrecht takes the position, in substance, that since it must be held that the domestic application sufficiently discloses the invention and since the disclosure, according to his contention, is the same in the first German application, in so far as the invention of count 5 is concerned, it must therefore be held that the said German application sufficiently discloses the invention of the count.

On this phase of the case the board said: "In his brief at final hearing the party Engelbrecht does not apply count 5 to his German applications in detail, but merely points out that his 'domestic application is a substantial duplicate of the parent applications' and 'since it has already been

determined that each of the counts of the interference finds adequate basis in Engelbrecht's domestic application, the basis for the counts in the parent applications is considered obvious' * * *. It is considered clear that the domestic Engelbrecht application is not a 'substantial duplicate' of a single foreign application, for two apparently unrelated German applications have been combined into a single United States application. There is no cross-reference from one German application to the other, yet the two have been combined into one domestic application. Moreover, the question of whether count 5 is supported by the German applications of Engelbrecht is not determined by the fact that a claim corresponding to this count appears in the United States application of Engelbrecht. The question of whether the party Engelbrecht can make count 5 in his domestic application has not been raised in this proceeding, either during the motion period or at final hearing, but the question of whether the German applications of Engelbrecht support count 5 may be considered, for these applications constitute Engelbrecht's proof of prior reduction to practice."

Appellant argues the question as if the setting up of the interference by the examiner was res judicata of the issue of whether or not the domestic application supports the count. Examiners frequently set up interferences between parties on counts which are afterwards held, upon motion to dissolve, not to be readable upon the disclosures of one or more of the parties. But the issue before the board was, and the issue here is, not whether the domestic application supports the count but whether the first German application supports it.

Appellant, in support of the above contention, relies upon the case of Dreyfus v. Lilienfeld, 49 F.2d 1062, 18 C.C.P.A. (Patents) 1539, which we think is not in point. In that case the counts had been construed in a certain manner, and there was no motion to dissolve. When the question arose, however, as to whether an earlier filed foreign application of the party, which was substantially identical with his domestic application, supported the counts, the opponent urged a different construction. The court there said that where applications were substantially identical and there was a doubt as to whether the foreign application supported the counts, it should be resolved against the appellant,

104

who, in the Patent Office, had accepted a construction of the counts which was supported by the United States application.

The situation at bar differs in this respect: Here we have two consolidated foreign applications, which are said collectively to afford a better basis for the count than the first German application. This was not the situation in the Dreyfus case. Moreover, in the instant case there is no controversy about construction, no contention that a different construction would be required to make the count respond to the first German application than should be given it in order to make it respond to the domestic application. Here, unlike the Dreyfus case, not only is there no issue as to construction of the count, but also there is no doubt, for reasons stated hereinafter, that the German application does not support the count.

■■. There is nothing in the Dreyfus case which hints at or suggests that the action taken by the Primary Examiner in setting up the interference, or Rogers' failure subsequently to raise the question of Engelbrecht's right to make the count, must be regarded as the proper basis for estopping the Patent Office tribunal or Rogers from raising the question that the German application does not support the count. The cases of Fishburn et al. v. Vincent, 88 F.2d 711, 24 C.C.P.A. (Patents) 1079, and Duerr & Broyles v. Potts, 90 F.2d 117, 24 C.C.P.A. (Patents) 1198, cited by Engelbrecht in this connection, go to the effect that a party in the position of Rogers is estopped from now raising the question that the domestic application does not support the count. The fact that he is estopped from questioning Engelbrecht's right to make the count upon the disclosure of the domestic application does not have the effect of estopping him from raising the question that the German application does not support the count, for the purpose of establishing a date of constructive reduction to practice.

The board pointed out that the second German application deals only with compounds which contain a single quaternary ammonium radical and therefore held that it does not constitute a constructive reduction to practice of the subject matter of count 5. The first German application, on the other hand, discloses both mono or asymmetric quaternary ammonium compounds and bis or symmetric quaternary ammonium compounds. It is

the contention of Rogers that regardless of whether or not the domestic application of Engelbrecht discloses the invention, it must be held that the first German application also discloses it before Engelbrecht is entitled to its filing date as a date of constructive reduction to practice. He urges that the domestic application and the first German application differ in their disclosures in that the domestic application, containing as it does the disclosure of the second German application, adds to and supplements the disclosure of the first German application.

The board, in its opinion, went into the whole subject matter involved in the count, and into the disclosure in the first German application with great particularity. It came to the conclusion that there was not such a full disclosure of the compound or the method of producing it as to comply with the statute, R.S. § 4888, 35 U.S.C.A. § 33, and be regarded as sufficient for a reduction to practice; that while Engelbrecht had disclosed in the first German application two examples of compounds alleged to be a disclosure of the issue of the count involved, neither could be regarded as a positive disclosure necessary for the purposes at bar.

The board said:

"There are two examples in the sworn translation of German application No. 80,-309. In neither of these examples is a compound corresponding to the limitations of count 5 disclosed. In the first example both a monoquaternary compound and a diquaternary compound are disclosed, but in both instances the quaternary compound is a derivative of pyridine. These compounds therefore fail to meet the limitation in count 5 that 'N(tert) is an aliphatic tertiary amine.' The same remarks are applicable to the first paragraph of Example 2, which discloses only a diquaternary ammonium derivative of pyridine. In the second paragraph of Example 2 a derivative of trimethyl amine is disclosed, but the starting material is N, N'–distearoyl ethylidene diamine. The ethylidene radical ($CH_3$–$\overset{|}{C}H$) which forms the central portion of this compound fails to conform to the requirement of count 5 that the methylene radical ($\overset{|}{C}H_2$) form the central portion of the compound.

"It is evident from the foregoing analysis of the sworn translation of German

application No. 80,309 that no specific compound is clearly named which comes completely within the scope of count 5, nor is any single process clearly described which necessarily results in a compound meeting the restrictions of count 5. It is recognized that if a proper selection is made among the numerous alternatives and variables which are suggested in German application No. 80,309, then the quaternary ammonium compounds of count 5 would be achieved. The path leading to the compounds of count 5 is tortuous, however, and it is not sufficient for the party Engelbrecht to have presented a labyrinth which includes the desired solution. What is required for a constructive reduction to practice is not a maze in which the desired answer may be found, but a clear picture of the final result. It is evident that the generic process outlined in the first part of German application No. 80,309 lacks many of the limitations required by count 5, and it is equally evident that the two specific examples and that the specific products on page 5 of the sworn translation do not respond to the terms of this count. In order to obtain the compounds specified in count 5 it would be necessary to select as a starting material one of the three suitable starting materials which are included in the list of fourteen on page 2 of the sworn translation. It would then be necessary to make a proper selection among the so-called oxo compounds on page 3 and make a proper selection as between reacting one imino group (–NH–) or both such groups. Finally, it would be necessary to carry out the last step of the process with a suitable tertiary organic base among the eight listed on page 4, a majority of which are not aliphatic tertiary amines. The necessity for a series of relatively specific selections among a relatively wide variety of choices negatives any conclusion that the specific compounds of count 5 are clearly disclosed in German application No. 80,309. In this connection reference may be had to the decision in In re Collins, 75 F.2d 1000, 22 C.C.P.A. 1053, 1935 C.D. 417, 458 O.G. 440. The doctrine of this ex parte decision was apparently adhered to in the more recent inter partes case of McCormick v. Malherbe, 116 F.2d 520, 28 C.C.P.A. 838, 1941 C.D. 222, 526 O.G. 3. It is accordingly held that the German applications relied upon by the party Engelbrecht do not constitute a constructive reduction to practice of the subject matter of count 5."

It is the position of Rogers, which supports the conclusion of the board, that Engelbrecht, in the first German application, disclosed a number of starting materials from which the compound of count 5 might be derived and that he includes among these compounds certain diamines which do not contain a methylene linking group, but which he relies upon as the full equivalents of those starting materials which do contain the methylene linking group. Rogers insists that in interference cases of the character at bar, the doctrine of equivalents has no application, citing McBride v. Teeple, Jr., 109 F.2d 789, 27 C.C.P.A. (Patents) 961. In other words, it is the position of Rogers, and that of the board, that there is no positive teaching in the first German application relating to or disclosure of the compound involved, except and unless some particular starting material might be selected from the large group named and reacted with one of a number of other compounds, some of which, the board held, are not aliphatic tertiary amines.

On this phase of the case the board regarded the cases of In re Collins, 75 F. 2d 1000, 22 C.C.P.A. (Patents) 1053, and McCormick v. Malherbe, 116 F.2d 520, 28 C.C.P.A. (Patents) 838, as pertinent to the issue, and Rogers relies upon those cases here. On the other hand, Engelbrecht urges the pertinency of Christmann v. Derby et al., 87 F.2d 502, 24 C.C.P.A. (Patents) 890.

Rogers contends that the factual situation in the Christmann case was different from that at bar. That case involved a reaction of phosphorus pentasulfide with any of the compounds included in eight listed classes. Rogers points out that in that case apparently "any reaction mass, so long as it contained phosphorus pentasulfide, with one or more of the other compounds was operative for the purposes of the invention. No stoichiometric reaction or precise formula was disclosed and consistently no compound of precise chemical constitution was recited in the count." Rogers contends, and we think properly so, that under those circumstances there was no reason why Derby "should be denied a claim covering only a part of his reaction products so long as the products of the more limited class were themselves described in the count with no greater degree of particularity than in the supporting disclosure" and suggests that the result would have been different if, as

here, the involved counts had "recited compounds of definite chemical constitution in support of which there was no example in the specification."

■ After a careful reading of the long and well-considered opinion of the board and of all the arguments of counsel and a review of the decisions cited by the respective parties, we are of the opinion that the board arrived at the right conclusions for the right reasons. The disclosure of fourteen starting materials from which one may be selected to be reacted with one of eleven oxo-compounds in the presence of a halogen hydracid, which resultant product is to be reacted with one of eight or nine tertiary organic bases, especially where not all; but only some, of the compounds in each group. will react so as to form the end product specified in ' count 5, could hardly be said, under the circumstances, to be such a disclosure as to be, convincing that in the first German application Engelbrecht had in mind the particular compound or chemical process involved here. But if it were assumed that he did have in mind such compound, it seems clear to us that neither it nor the method of producing it is taught sufficiently to meet the requirements of this case.

The board has given consideration, originally and upon petition for reconsideration, to this highly technical chemical subject matter and has fully discussed the whole question. We agree with its conclusions and findings in every particular. Certainly we have not been convinced that the board is wrong in its conclusion.

Engelbrecht has set up in opposite columns of his brief what he regards as the pertinent disclosure of the first German application and that of the domestic application and contends that they are identical. Rogers has pointed to particulars, on which we need not dwell at great length, wherein there is a difference between the disclosure of the first German application and that of the domestic application. But we need not determine whether or not the portions of the domestic application and those of the German application compared by Engelbrecht differ essentially, because, after all, the sole question here is whether or not the said German application so clearly and concisely discloses the invention of the count as to meet the requirements of the law. We are of the opinion it does not and that the board did not err in so holding.

The appeal as to all the counts except No. 5 is dismissed, and the decision of the board as to that count is affirmed.

Affirmed.