40 C.C.P.A.(Patents)

**Application of PRUTTON.**

**Patent Appeals No. 5869.**

United States Court of Customs and Patent Appeals.

Dec. 17, 1952.

Oberlin & Limbach, Cleveland, Ohio (Oscar C. Limbach, Cleveland, Ohio, and Almon S. Nelson, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (S. W. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

GARRETT, Chief Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner rejecting numerous claims of

appellant's application for a patent (serial No. 520,548) entitled "Lubricant Improving Agent and Lubricant Containing Same." No claims were allowed, but many of those rejected were not included in the appeal to us and several of those which were included in the appeal as taken were withdrawn in the brief before us and at the hearing. As to those so withdrawn the appeal is hereinafter formally dismissed.

Those before us for consideration are numbered 6, 7, 8, 13, 14, 27, 28, 29, 30, 31, 33, 43, 75, 76, and 77.

In the official statement of the examiner after the appeal to the board had been taken, the following description was given:

"The alleged invention relates to luricating oil compositions containing additives effective to reduce the tendency of the lubricating oils to oxidize or to form corrosive products. Such additives are, broadly, the reaction products of a phosphorus sulfide with unsaturated hydrocarbons, which may be olefines, olefine polymers, aromatic hydrocarbons, terpenes, etc. A preferred class are the bicyclic terpenes, such as alpha-pinene, beta-pinene or turpentine, the latter being the elected species.

"The hydrocarbon-$P_2S_5$ reaction product may, if desired, be neutralized with hydroxides, oxides or salts of metals such as the alkali metals. Another feature of the alleged invention is the stabilization of the reaction product against decomposition by the addition of a small amount of an alcohol, such as butyl alcohol."

In the decisions below the claims were divided into groups and many of those not brought before us were grouped with others which are before us. This has created some difficulty in determining the relevancy of some of the expressions below to the particular claims we have to consider, but we have been aided by the briefs upon this as upon other phases of the controversy.

The application was filed January 31, 1944, so the controversy has been long-drawn out, caused, in the main, by interference proceedings.

In the brief for appellant before us it is said, inter alia:

"The invention of the claims in issue relates to the use in lubricating compositions of certain reaction products prepared by chemically reacting an unsaturated hydrocarbon with a phosphorus and sulphur-containing reagent. Since the exact mechanism of the chemical reaction of an unsaturated hydrocarbon and a phosphorus and sulphur-containing reagent is unknown and the chemical structure of the product or products formed is unknown, it is necessary to refer to them as 'reaction products.'

\* \* \* \* \* \*

"All of the retained claims, Nos. 6 to 8, 13, 14, 27 to 31, 33, 43, and 75 to 77, are now limited to lubricating compositions which comprise a major proportion of a lubricating oil, the effectiveness of which has been increased by the inclusion therein of a minor amount of said reaction products. That is the basic invention to which appellant is believed entitled to protection.

"Certain of the claims, Nos. 27 to 31, 33, 43 and 75 to 77, are directed to refinements in or improvements on such basic invention. One such refinement is the stabilization of the reaction product by reacting it either with an alcohol (claims 43 and 75 to 77) or an alkali (claims 28, 33) for the purpose of suppressing the generation of haze in the lubricant containing the reaction product, which haze is the result of lack of complete solubility of the reaction product in the oil, or decomposition of such reaction product. Claims, Nos. 29 to 31, set forth a further refinement or improvement in the basic invention in the combined use of these reaction products with other improving agents (detergents) with which they cooperate in an unexpected manner when present together in the same oil.

"As previously indicated, appellant does not claim to be the first inventor of these reaction products. He does

claim to be the first to discover their utility in small concentrations in lubricating oils.

"This basic invention was first disclosed by appellant in an application filed in the Patent Office on January 22, 1937. Appellant has been claiming that basic invention since that time. In the interval, appellant has been involved in certain Interferences.

"One of those Interferences, No. 81,-936, was concerned with a narrow class of such reaction products produced at a specific temperature. Another Interference, No. 82,746, was concerned with the combined use of such reaction products with free alcohol. The remaining Interference, No. 82,747, was concerned with the product made by chemically combining such reaction product with an alcohol.

"There was a determination of priority of inventorship adverse to applicant in each of Interferences, Nos. 81,936 and 82,746. Interference 82,-747 was dissolved, without an adjudication of priority, on the ground that appellant had no basis in his application for the counts of that Interference. That question is here for review, the particular claims being Nos. 43, 75, 76 and 77.

"As will be shown, hereinafter, the earliest dates alleged and established by the prevailing parties in said interferences were all subsequent to January 22, 1937, appellant's constructive reduction to practice by the filing of his parent application."

The board selected claims 1, 27, and 75 as illustrative. Inasmuch as claim 1 is not before us, we substitute claim 6 therefor, and in addition quote claims 29 and 43:

"6. A liquid lubricating composition suitable for use as the lubricant in the crankcases of internal combustion engines comprising a major proportion of a refined mineral lubricating oil and a minor proportion of a phosphorus and sulphur containing material derived from an unsaturated hydrocarbon by a process which includes the step of reacting such unsaturated hydrocarbon with a sulphide of phosphorus.

"27. A lubricating composition comprising a major proportion of lubricating oil and a minor amount of the neutralized reaction product of a cyclic terpene with $P_2S_5$.

"29. A lubricating composition comprising as essential constituents, (a) a product derived from an unsaturated hydrocarbon by a process which includes the step of reacting such unsaturated hydrocarbon with a phosphorus and sulphur containing reagent and (b) a detergent.

"43. A lubricating oil composition comprising a petroleum lubricating oil and a proportion effective to retard oxidation of the composition of an inhibitor such as results from the reaction of a monohydroxy aliphatic alcohol with a condensation product of turpentine and phosphorus pentasulfide.

"75. A lubricating composition comprising a petroleum lubricating oil and from about .05% to about 5% of a product resulting from the reaction of .1 to 10% by weight of a high molecular weight normal alcohol with a condensation product of turpentine and phosphorus pentasulphide."

The following references were cited:

| | | |
|---|---|---|
| Winning et al. | 2,294,145 | Aug. 25, 1942; |
| Lincoln et al. | 2,313,248 | Mar. 9, 1943; |
| Loane et al. | 2,316,078 | Apr. 6, 1943; |
| Loane et al. | 2,316,081 | Apr. 6, 1943; |
| Loane et al. | 2,316,082 | Apr. 6, 1943; |
| Lincoln et al. | 2,348,080 | May 2, 1944; |
| Angel et al. | 2,381,377 | Aug. 7, 1945; |
| May | 2,392,252 | Jan. 1, 1946; |
| May | 2,486,188 | Oct. 25, 1949. |

The grounds of rejection stated by the tribunals of the Patent Office, as applied to the claims before us, are set forth in the brief of the Solicitor for the Patent Office as follows:

"Claims 6, 7, and 13, stand rejected as anticipated by the Loane et al. patents Nos. 2,316,078, 2,316,081, 2,316,082 and the Lincoln et al. patents Nos. 2,-313,248 and 2,348,080. The appellant does not contend that the references are ineffective as to subject matter, but he does assert priority over the art

on the basis of two of his own patents Nos. 2,355,106 and 2,242,260. * * *

"The examiner contended and the Board agreed, that neither the first application (Serial No. 121,827) nor the second (Serial No. 356,357) included sufficient disclosure to constitute effective support for the claims at bar.

"Thus the issue with respect to claims 6, 7, 13 * * *, is simply whether or not the appellant's prior applications provide proper support therefor.

"Claim 29 is similarly rejected on the Loane et al and Lincoln et al. patent but, since it includes the use of a detergent, the patent to Winning et al. has been cited to show the conventionality of this feature.

"Claims 6 to 8, 13, 14, 27 to 31, and 33 were rejected as unpatentable over the count in Interference No. 81,936 between this application and that of the party May, the latter application having matured into patent No. 2,486,188, since the interference resulted in an award of priority to May. Appellant now relies upon his 1937 application Serial No. 121,827 as antedating any date alleged by May in the Interference. The essential issue with respect to this group of claims is the same, therefore, as that discussed above in connection with the first group, i. e., the appellant's right to his earlier filing date.

"Claims 27, 28 and 33 refer to neutralization of the reaction product which the examiner held to present nothing patentable over the interference issue in view of either of two Loane et al. patents Nos. 2,316,081 and 2,316,082. With respect to claims 29, 30 and 31, the examiner held the addition of a 'detergent' to the composition of the interference count was not inventive in view of Winning et al.

"Claims 43, 75, 76, and 77 were rejected as failing to find support in the application in issue, which the appellant disputes. Claims 75, 76 and 77 were further rejected as unpatentable over the patent to May No. 2,392,252 but this relates back to the same question of priority noted above."

As we understand the foregoing, there was a "double rejection" of all the claims before us with the exception of claims 8, 14, and 43. All except those three may be said to have been rejected upon the particular art cited against them. (It would seem that inasmuch as the count in Interference 81,936, upon the basis of which priority as to claims 6 to 8, 13, 14, 27 to 31, and 33 was awarded to May, the patent to May which followed constituted prior art as to those claims and the same situation would seem to exist relative to the result in Interference 82,746.)

It is noted that claims 6, 7, 13, 27, 28, 29, 30, 31, and 33 were rejected upon other of the references cited in addition to their rejection upon the result of the two interferences. So, there was a double rejection of all those claims except 8 and 14, the rejection of which grew out of the interference.

The rejection of claims 75, 76, and 77 was predicated upon two grounds: first, that they are not supported by the disclosures in the application of appellant here involved, and, second, that they are not patentable over the May patent No. 2,392,252.

Appellant challenges the first ground, and relies upon the disclosures of his early patents to overcome the second ground.

Claim 43 apparently is the only claim against which no prior art was cited. It stands rejected only upon alleged lack of disclosure in the instant application.

As indicated in the brief of the Solicitor for the Patent Office quoted supra, there is no contention on behalf of appellant that the claims are not met by the prior art disclosed in the references respectively cited against them, but it is contended that the subject matter of the claims was disclosed in an application of appellant (serial No. 121,827) the filing date of which was prior to the filing dates of the references, and that appellant's right to patent for such subject matter was kept alive by his application, serial No. 356,357, which was succeeded by the instant application.

In view of the virtual concession on behalf of appellant with respect to the claims being met by the prior art cited against them we will not discuss that question, and, therefore, we are concerned solely with the disclosures of the applications of the early patents issued to appellant.

The situation, stated somewhat differently, is as follows: (1) If the application, serial No. 121,827, which matured into patent No. 2,242,260 supports the claims, as is contended on behalf of appellant, and continuity of disclosure with the instant application, serial No. 520,548, is established, appellant is entitled to a favorable decision as to all the claims before us except perhaps claim 43; (2) If the first named application may not be relied upon by appellant the decision appealed from must be affirmed and the matter of continuity requires no consideration; (3) Even if the first named application may be relied upon, appellant cannot prevail unless continuity be established, and continuity depends upon the disclosures in appellant's application, serial No. 356,357, which matured into patent No. 2,355,106.

The tribunals of the Patent Office concurred in the view that the subject matter as described in the two patent applications upon which appellant relies for disclosure antedating the disclosures in the cited references was not sufficient to support the claims, and, in this connection, attention was directed to the requirement of R.S. 4888, 35 U.S.C. § 33, for a description of a claimed invention in "such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same."

The following is taken from the official statement of the examiner after the appeal to the board from his decision:

"Serial No. 121,827, now patent No. 2,242,260, refers broadly to lubricant additives containing phosphorus and sulfur, and more specifically to additives of the type formed by reaction of an *oxygen-containing* compound with a phosphorus-sulfur compound. On pages 2 to 4 of the patent there is an extensive list of organic compounds which may be reacted with any of the long list of reagents containing phosphorus and sulfur, listed on pages 4 and 5. Included in the list of organic compounds which may be reacted, there are disclosed (page 2) a number of unsaturated hydrocarbons. Included in the list of reagents are those which contain both phosphorous and sulfur (page 5, column 1). However, it is believed that the mere compilation of a list of compounds which includes among many others some unsaturated hydrocarbons, with a statement that any one of this list may be reacted with any one of a list of reagents, some of which are phosphorus sulfides, is not a sufficient disclosure under R.S. 4888 to support claims specifically directed to the reaction product of a phosphorus and sulfur containing reagent with an unsaturated hydrocarbon. In addition to the fact that the parent case does not disclose a single specific example of such a reaction product or a specific statement that these materials are reacted, there is no disclosure of the method or conditions of reaction.

"Attention is directed to Engelbrecht v. Rogers, 148 F.2d 102, 106, 32 C.C.P.A., Patents, 861, wherein it was stated:

" 'The disclosure of fourteen starting materials from which one may be selected to be reacted with one of eleven oxo-compounds in the presence of a halogen hydracid, which resultant product is to be reacted with one of eight or nine tertiary organic bases, especially where not all, but only some, of the compounds in each group will react so as to form the end products specified in count 5, could hardly be said, under the circumstances, to be such a disclosure as to be convincing that in the first German application Engelbrecht had in mind the particular compound or chemical process involved here. But if it were assumed that he did have in mind such compound, it seems clear to us that neither it nor the method of producing it is taught suffi-

ciently to meet the requirements of this case."

"It is believed, therefore, that applicant is not entitled to rely on the filing date of Serial No. 121,827, filed January 22, 1937, for the subject matter of the claims under discussion.

"The disclosure of Serial No. 356,-357, now patent No. 2,355,106, is admittedly drawn along the same lines as that of Serial No. 121,827, above discussed; accordingly, applicant is considered not to be entitled to the filing date of application Serial No. 356,357."

The decision of the board, of course, was in full harmony with the foregoing and was adhered to in a second decision responding to a petition for reconsideration. We do not find any of the statements of fact made in the decision of the board challenged, and there has been nothing presented before us which was not before both of the tribunals of the Patent Office and fully and fairly stated and considered by them, as is evidenced by their decisions.

The following is from the decision of the board:

"* * * For support for the claims under discussion appellant refers to the paragraph at lines 35 to 40 of the second column of page 1 of the earlier patent and to an identical paragraph in the second patent for a broad statement of the subject matter. This is merely a very broad statement of the class of subject matter contemplated. The immediately succeeding paragraph in each of the patents is a more specific statement of the subject matter of the invention of the patents and is in each instance in such terms as to exclude the subject matter of the present claims. The very broad statements of asserted invention thus relied on does not correspond to the claims of either of the patents.

"Referring to the earlier of the two patents, appellant calls attention to the list of unsaturated hydrocarbons included in the very much broader list of hydrocarbons, beginning in column 1 of page 2 of the patent and continuing to the middle of the second column of the same page. Turpentine is included in this list. The complete list of organic compositions includes, in generic form, most of the organic compounds found discussed in ordinary textbooks of organic chemistry. The list covers most of page 2, all of page 3, and three-fourths of page 4 of the printed patent. For the second reactant appellant directs attention to section 1 of paragraph C on page 5 of the patent. The phosphorus sulphides thus listed form only a relatively small group within the much larger group of reagents listed on pages 4 and 5 of the patent. It appears to be appellant's view that a selection of an unsaturated hydrocarbon from the first list and of a sulphide of phosphorus from the second list will provide support for the claims here under discussion. The Examiner holds, and properly we think, that the presentation of such lists from which reagents may be selected is not a sufficient disclosure to support claims to a particular class of reaction product which might be produced by proper selection of reagents and determining the conditions of reaction.

"The patent refers, on pages 5 and 6, to more particular classes of addition agent, that is, lubricant modifier. Paragraph A of the first column of page 5 refers to reaction products of phosphorus pentasulfide, with at least 18 different specific organic compounds, but this list does not include any exemplary subject matter coming within the claims in dispute. The further lists of reaction products on pages 5 and 6 likewise fail to provide any support for the claims in consideration.

"As we indicated above, the list of organic compounds which may constitute a reagent (covering pages 2, 3 and three-fourths of page 4 of the patent) include in either generic or specific form substantially all of the usual organic compounds encountered in elementary textbooks of that science. In the case of Schering Corp. v. Gilbert, 2 Cir., 153 F.2d 428, claims to a relatively restricted class of chemical

compound which was sufficiently broad to involve some speculation was held to be invalid notwithstanding the presence of the operative specific examples within the class. Hercules Powder Co. v. Rohm & Haas, D.C., 66 F.Supp. 899, is to the same effect. The number of unsaturated hydrocarbons is very large. Moreover there is nothing in the text of the earlier patent indicating a preferential selection of such unsaturated hydrocarbons as one of the reactants nor of combining that reagent with a sulphide of phosphorus as a second reagent. We are convinced that the disclosure of the early patent 2,242,260 does not provide a proper support for the claims under consideration. The statutes require more than a statement of a broad field to be usurped to support claims to a composition of matter.

"To escape all of the references relied on by the Examiner appellant must find support for the claimed subject matter in the earlier of the two patents. He must also find support in the second patent for the same subject matter in order to maintain the continuity of such subject matter before the office.

"The second patent is no better than the first from the standpoint of proper support for the subject matter here under consideration. It appears to be, in most significant respects, a copy of the subject matter of the earlier patent, except that it fails to mention turpentine. Turpentine constitutes the specific supporting illustration for the claims here on appeal. Appellant suggests "However, an examination of the applicant file will show that this was inadvertently omitted from the patent specification." The patent specification as printed appears to be in this respect an exact copy of the application as filed. Whether the omission from the application was inadvertent or for other reason seems to be immaterial since it was not present and therefore cannot be said to have been pending before the office from the date of the first patent until the filing date of the present application."

The arguments in the brief for appellant have been carefully considered.

It is contended in effect that the tribunals of the Patent Office erred (1) in failing to give appellant the benefit of the filing date (January 22, 1937) of his application No. 121,827 and, (2) that in refusing to give such credit the Patent Office was inconsistent because "it had already twice decided that appellant's early patents contained sufficient disclosure."

We are not impressed by the "inconsistency" argument made on behalf of appellant. Presumably the claims which were allowed in appellant's patents Nos. 2,242,-260 and 2,355,106 were supported by disclosures in the applications upon which those patents were based. If they were not so supported appellant's patents may be subject to attack, but that is not a matter of concern in the instant case. We are here concerned only with the matter of support by appellant's early applications of the claims here presented, and we agree with the holdings of the tribunals of the Patent Office in that respect.

Since neither of the applications upon which appellant relies for disclosure is found to support the claims, the matter of continuity requires no further discussion here, but it is not amiss to say that even if application serial No. 121,827 did support them, his application, serial No. 357,357 does not. As stated in the brief of the Patent Office Solicitor, the latter application "fails to specifically mention turpentine as even a possibility for experiment," and the species claims elected on behalf of appellant for prosecution, after denial of any generic claims, were what may be called the "turpentine claims."

As for claim 43, we find no error in its rejection resulting from Interference No. 82,747, nor do we think it was error to hold that it is not adequately supported by the application in the instant case.

As has been stated, counsel for appellant withdrew from the appeal to us claims 1 to 5, 32, and 37 to 42. So, the appeal is dismissed as to those claims.

As to all the other claims, the decision of the Board of Appeals of the Patent Office is affirmed.

Affirmed.