43 C.C.P.A.(Patents)

**Carl F. PRUTTON, Appellant,**

v.

**Everett W. FULLER and Ellwood M. Johnson, Appellees.**

**Patent Appeal No. 6190.**

United States Court of Customs and Patent Appeals.

Feb. 21, 1956.

Oberlin & Limbach and O. C. Limbach, Cleveland, Ohio, for appellant.

John L. Sullivan, New York City (Guy R. M. delGiudice, New York City, and Richard K. Stevens, Washington, D. C., of counsel), for appellees.

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, COLE and JACKSON (retired), Judges.

COLE, Judge.

The Board of Patent Interferences of the United States Patent Office awarded priority of invention of the subject matter in issue in Interference No. 85,833 to the junior party, Fuller and Johnson, and the senior party below, Prutton, appeals to this court from that decision. The invention in controversy is a mineral oil lubricant having as additives spec-

ified proportions of the detergent magnesium sulphonate, and an oxidation and corrosion inhibitor formed by reacting a phosphorous sulphide with a dicyclic terpene (turpentine). The interference issue comprises six generally similar counts, of which count 1, reproduced below, is typical.

"1. An improved mineral oil composition comprising a viscous mineral oil fraction having in admixture therewith a minor proportion, from about 0.5 per cent to about 5.0 per cent, of an oil-soluble magnesium sulfonate; and a minor proportion, from about 0.10 per cent to about 3.0 per cent, of an oil-soluble, phosphorus-and sulfur-containing reaction product obtained by reaction of substantially one mol of a phosphorus sulfide with four mols of a material selected from the group consisting of a dicyclic terpene and an essential oil predominantly consisting of a dicyclic terpene, at a temperature varying between about 100°C. and about 160°C."

The counts are claims 1 to 6 of the patent to Fuller and Johnson, No. 2,-476,972, issued July 26, 1949, on an application filed November 15, 1946. Prutton is involved in the interference on application serial No. 142,715, filed February 6, 1950, and said to be a continuation-in-part of application serial No. 544,637, filed July 12, 1944, which, in turn, is a continuation-in-part of application serial No. 520,548, filed January 31, 1944. It will thus be seen that the Prutton application directly involved in the instant interference was filed after the issuance of the Fuller and Johnson patent, while the earlier applications of Prutton were filed prior to the filing of the application on which the patent was granted.

When Prutton copied the claims in issue from the Fuller and Johnson patent and requested an interference, he was called on by the Primary Examiner for a prima facie showing that he had made the invention defined by those claims prior to the filing date of Fuller and Johnson. In response to that requirement Prutton relied on the earlier applications above referred to, but the examiner held that those applications did not disclose the subject matter of the claims in question, and the claims were accordingly rejected. Prutton appealed, ex parte, to the Board of Appeals, and the board, being of the opinion that each of Prutton's earlier applications sufficiently disclosed the compositions called for by the claims, reversed the decision of the examiner, whereupon the instant interference was declared, Prutton being made the junior party.

Prutton moved to shift the burden of proof in the interference on the basis of his earlier applications and that motion was granted by the Primary Examiner in view of the ex parte decision of the Board of Appeals referred to above. By that action Prutton was accorded a date of constructive reduction to practice of January 31, 1944, the filing date of application serial No. 520,548. Fuller and Johnson, in their preliminary statement, did not allege any date as early as the one thus accorded Prutton, and they were therefore placed under an order to show cause why judgment on the record should not be entered against them. Fuller and Johnson did not take any testimony but, at their request, the interference was set for hearing before the Board of Patent Interferences on the issue as to whether the counts were supported by Prutton's earlier applications. The Board of Patent Interferences, disagreeing with the Board of Appeals, held that neither of Prutton's earlier applications disclosed the interfering subject matter and accordingly awarded priority to Fuller and Johnson, whereupon the instant appeal was taken by Prutton.

The issue thus presented by this appeal is limited to the sufficiency of the disclosure of the earlier Prutton applications. If either or both of those applications affords proper support for the interference counts, the decision below must be reversed; otherwise it must be

affirmed. So far as that issue is concerned, there are no material differences between the counts and they stand or fall together. They have not been considered separately by the parties and need not be so considered here.

■ The Board of Patent Interferences held that since Prutton had copied the interference counts from an issued patent he had the burden of showing a clear basis for them in his prior applications, and that since Prutton's application in which the claims were copied was filed after the issuance of the Fuller and Johnson patent his burden "to show such clear and unequivocal disclosure was as of beyond a reasonable doubt." Prutton questions those holdings, and argues that the fact that he elected to file a new application for the purpose of interference instead of inserting the interference claims in one of his earlier applications should not place him under a heavier burden of proof.

In the view we take of this case it is not necessary to decide whether the subject matter of the counts must be disclosed "beyond a reasonable doubt" in Prutton's earlier applications in order for him to prevail here. Each of those applications was pending for more than five years before the Fuller and Johnson patent issued, and no claim corresponding to the present counts was presented in either application during that period. It was only after Prutton had seen the Fuller and Johnson patent that he asserted claims of the type here involved. Under such circumstances Prutton has the burden of clearly showing a basis in his earlier applications for the claims in issue. As was said in Lindley v. Shepherd, 58 App.D.C. 31, 24 F.2d 606, 608:

"* * * His amendment was inspired by knowledge of what Shepherd had accomplished, and all doubts as to his right to appropriate what has been granted Shepherd should be resolved against him. * * *"

Similarly, in Bierly v. Happoldt, 201 F.2d 955, 960, 40 C.C.P.A., Patents, 774, this court said:

"We think doubt as to sufficiency of disclosure should be resolved against one who copies claims for the purpose of interference in all instances, and most emphatically so in cases where the claims are copied from an existing patent."

As above indicated, the interference counts call for the conjoint use as additives in a lubricating oil of a magnesium sulphonate detergent, and an inhibitor formed by reacting a phosphorous sulphide with a dicyclic terpene (turpentine).

In determining the scope of the counts, which originated in the Fuller and Johnson patent, both parties have had resort to the file history of the patent to determine the invention defined in the counts.

The record shows that when the claims here in issue were first presented by Fuller and Johnson they were rejected by the examiner on the patent to Berger and Fuller, serial No. 2,416,281, in view of the patent to Griesinger and Engelking, serial No. 2,402,325. The examiner pointed out that Berger et al. shows the combination of a phosphorous sulphide-terpene reaction product and a basic calcium sulphonate in lubricating oils, and that Griesinger et al. discloses the equivalence of basic magnesium and basic calcium sulphonates as lubricating oil additives. It is also proper to note that while the Berger reference does not expressly mention magnesium it states that, "All metals are contemplated herein as constituents of the said metal sulfonates," and that magnesium is, of course, a metal.

In response to the rejection, Fuller and Johnson argued that their application showed that magnesium sulphonates are unexpectedly superior to calcium sulphonates in the claimed compositions, and said, "It appears in this rejection, however, that the Examiner has over-

looked the fact that the very basis upon which applicants' invention is predicated is the unexpected superiority of the magnesium sulfonates over the calcium sulfonates and the other metal sulfonates when used in conjunction with the P$_2$S$_5$ reaction product." The examiner then repeated his rejection, asserting that the results relied on had not been shown to be unexpected but, upon a further argument by Fuller and Johnson, pointing out why the results were unexpectedly superior when magnesium sulphonates were used, the claims were allowed.

From the foregoing it is clear that the use of magnesium sulphonates in the claimed compositions, as distinguished from sulphonates of calcium or other metals is the essence of the invention recited by the counts. It follows that, if Prutton is to be accorded the benefit of the filing date of either of his earlier applications, such applications must contain a clear disclosure of the use of a magnesium sulphonate in combination with the phosphorous sulphide-terpene reaction products set forth in the counts.

The disclosures of Prutton's two earlier applications are generally similar. Each of them discloses a mineral lubricating oil having as additives an oxidation and corrosion inhibitor and a detergent. Long lists of suitable inhibitors are given in each application and some of those listed are phosphorous sulphide-terpene reaction products of the kind recited in the counts. The applications also give long lists of substances which may be used as detergents, and included among these are oil soluble sulphonates of magnesium, calcium and other metals. Each of the applications thus discloses, among many others, the detergents and inhibitors set forth in the counts, and the applications indicate that any of the detergents may be combined with any of the inhibitors in a mineral lubricating oil. It would thus be possible by piecing together certain elements of the application disclosures, in a manner generally suggested in the applications, to produce the specific compounds here in issue.

It is clear, however, that when an applicant recites two or more lists of ingredients and indicates that any one in one list may be combined with any one in another, he is not necessarily entitled to claim any specific combination of elements which may fall within the scope of such a disclosure, and we have so held. In re Prutton, 200 F.2d 706, 40 C.C.P.A., Patents, 724; Engelbrecht v. Rogers, 148 F.2d 102, 32 C.C.P.A., Patents, 861. As was said in the decision of the board affirmed in the Prutton case, supra, "The statutes require more than a statement of a broad field to be usurped to support claims to a composition of matter." 200 F.2d at page 712, 40 C.C.P.A., Patents, at page 731.

The question as to whether an application forms a proper support for a claim to a composition which is not specifically disclosed, but which falls among compositions suggested by general language in the application is one which must be determined largely by the particular circumstances of each case. The determining factor is whether the application would fairly suggest to the skilled worker in the art the particular composition claimed, or whether the desirability of that composition could be ascertained only by extensive experimentation. As was noted in In re Prutton, supra, the indication or lack of indication of a preference for the composition, in the application disclosure, is an important factor to be considered in making the determination, since anyone attempting to carry out the disclosure of an application would logically begin with the preferred examples given.

Neither of Prutton's earlier applications indicates in any way whatever any preference for or superiority of magnesium sulphonates over the sulphonates of other metals in general, or of calcium in particular. The closest approach to such an indication is found in the state-

ment in application No. 544,637, that, "Of the metallic bases which may be used for the purpose of preparing the salts, the polyvalent metals are preferred and another preferred sub-class is that of the alkaline earth metals." Magnesium is one of the comparatively large group of metals thus "preferred," but there is no suggestion that it is superior to the others. Similarly, although magnesium is frequently grouped in the disclosures of those applications with such other metals as calcium, barium, strontium, zinc, and cadmium, there is nothing to suggest that it has any advantage over them.

On the other hand, as was pointed out by the Board of Patent Interferences, each of Prutton's earlier applications does appear to indicate a definite preference for calcium sulphonate. Thus, each of those applications contains the statement that, "For example, the turpentine-$P_2S_5$ reaction product of the type illustrated by the several examples hereinabove, when used together with calcium mahogany sulphonates, has a very high degree of thermal stability as compared with the same reaction product used alone." That statement is followed in each case by a specific example showing the use of a calcium sulphonate with a turpentine-$P_2S_5$ reaction product. No such laudatory statement is found in either application with respect to magnesium, nor is any example given of the use of a magnesium sulphonate with a turpentine-$P_2S_5$ reaction product. It is not reasonable to suppose that Prutton would have confined himself to a statement that calcium mahogany sulphonates, when used with turpentine-$P_2S_5$ reactions products gave a very high degree of thermal stability if he had been

aware at the time of filing his earlier applications, that magnesium sulphonates were unexpectedly superior to those of calcium.

A careful consideration of Prutton's two earlier applications leads to the conclusion that although they contain disclosures of a scope which embraces the specific compositions recited by the claims here in issue, as well as a large number of other compositions, they do not fairly suggest any preference for the claimed compositions and hence would not lead anyone to try them. On the contrary, the singling out of calcium sulphonates for special recognition from the group which also includes magnesium sulphonates would clearly tend to lead anyone desiring to practice Prutton's inventions away from magnesium sulphonates.

For the reasons given we are of the opinion that a clear basis for the specific compositions set forth in the interference counts cannot be found in the broad and comprehensive disclosures of either of Prutton's applications, Nos. 520,548 and 544,637 and that since Prutton offered no evidence other than those applications to show conception or reduction to practice of the invention in issue prior to the filing date of the application on which the Fuller and Johnson patent was granted, the Board of Patent Interferences properly awarded priority of invention to Fuller and Johnson.

The decision of the Board of Patent Interferences is affirmed.

Affirmed.

JACKSON, Judge, retired, recalled to participate.