867 F.2d 616
 10 U.S.P.Q.2d 1473
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Rene HEYMES, et al., Appellant,
v.
Takao TAKAYA, et al., Appellee.
 No. 88-1487.
 United States Court of Appeals, Federal Circuit.
 Jan. 23, 1989.
 
 Before FRIEDMAN, Circuit Judge, NICHOLS, Senior Circuit Judge, and NIES, Circuit Judge.
 FRIEDMAN, Circuit Judge.
 
 DECISION
 
 1
 The decision of the Board of Patent Appeals and Interferences of the United States Patent and Trademark Office, awarding priority in Interference No. 101,497 to the appellee Takao Takaya, et al. (Takaya) over the appellant Rene Heymes, et al. (Heymes), is affirmed.
 
 OPINION
 
 2
 * On May 31, 1984, Takaya submitted a preliminary amendment adding claim 119 to its U.S. Patent Application No. 615,721, filed May 31, 1984. Claim 119 was copied from Heymes' United States Patent No. 4,386,210 in order to create an interference. The primary examiner allowed the added claim. In the notice declaring the interference, the examiner-in-chief gave Takaya a filing date of February 11, 1977, the filing date of its earlier U.S. Patent Application No. 767,700, and designated Takaya as senior party.
 
 
 3
 Heymes filed motions under 37 C.F.R. Sec. 1.633(b) and (g), for judgment on the grounds there is no interference-in-fact, and seeking a determination that the specification of Takaya's originally filed application did not provide adequate support, as 35 U.S.C. Sec. 112 requires, for the copied claim 119. The examiner-in-chief denied both motions, and the Board affirmed. The Board ruled, and we affirm, that Heymes has failed to establish that there is no interference-in-fact. The only issue before us is whether the determination that the specification adequately supported claim 119 was correct.
 
 II
 
 4
 Claim 119 is drawn to novel chemical compounds used in the
 
 
 5
 preparation of pharmaceutical chemicals that are
 
 
 6
 potentially useful for the treatment of
 
 
 7
 infectious diseases.
 
 
 8
 The simplest way to describe the compounds of claim 119 is
 
 
 9
 to consider them as structural modifications of acetic acid,
 
 
 10
 an organic acid, which is the acid in ordinary table
 
 
 11
 vinegar. Acetic acid has a structure with two carbon
 
 
 12
 groups--C(H)3-COOH--where C designates a carbon atom, H
 
 
 13
 designates a hydrogen atom, and O designates an oxygen atom.
 
 
 14
 The first carbon group, the C(H)3 group, is a carbon atom
 
 
 15
 with three hydrogen atoms bonded to it. The second carbon
 
 
 16
 group, the COOH group, is the acid group. The compounds of
 
 
 17
 claim 119 are those in which the chemical structure of
 
 
 18
 acetic acid has been modified in three ways:
 
 
 19
 A. One of the hydrogen atoms of the C(H)3 group of acetic
 
 
 20
 acid has been replaced by a ring system. A ring system is a
 
 
 21
 collection of atoms which are linked together to form a ring
 
 
 22
 composed of a certain number of members. In claim 119 the
 
 
 23
 ring system is comprised of five atoms which are linked
 
 
 24
 together to form a pentagon. This pentagonal ring system is
 
 
 25
 the one referred to by the parties as "2-amino-1,3-thiazol-4-yl."
 
 
 26
 B. The remaining two hydrogens of the C(H)3 group of acetic
 
 
 27
 acid have been replaced by a chemical moiety containing a
 
 
 28
 nitrogen and an oxygen atom bonded together. The nitrogen
 
 
 29
 atom serves as the point of attachment of the moiety to the
 
 
 30
 carbon atom of the acetic acid molecule. In addition to the
 
 
 31
 nitrogen-oxygen unit, the moiety contains an additional
 
 
 32
 array of atoms, referred to by the parties as the "R(2) substituent."
 
 
 33
 C. The third and final modification of the acetic acid
 
 
 34
 molecule is a minor modification. The COOH portion--the
 
 
 35
 acid portion--of the acetic acid molecule remains either
 
 
 36
 unchanged in structure or has undergone only a slight change
 
 
 37
 to form a derivative of the acid.
 
 
 38
 The Takaya specification discloses a large number of these
 
 
 39
 modified acetic acid compounds. The specification discloses
 
 
 40
 compounds in which several different types of ring systems,
 
 
 41
 including the specific pentagonal ring system of claim 119,
 
 
 42
 are used to modify the acetic acid structure. The
 
 
 43
 pentagonal ring system is shown in combination with a number
 
 
 44
 of different nitrogen-oxygen moieties. Although the precise
 
 
 45
 nitrogen-oxygen moiety of claim 119 is not shown in
 
 
 46
 combination with this pentagonal ring system, it is shown in
 
 
 47
 combination with a different ring system, one hexagonal in shape.
 
 
 48
 Heymes argues that the Takaya specification is so broad that
 
 
 49
 one skilled in the art would not find sufficient guidance in
 
 
 50
 the specification to make the specific compounds of claim
 
 
 51
 119, or alternatively that it would take undue
 
 
 52
 experimentation to manufacture and prepare all of the
 
 
 53
 various combinations that would be required to reach the
 
 
 54
 specific claim 119 compounds. As the Board summarized
 
 Heymes' argument:
 
 55
 Heymes urges that the Takaya application can only be
 
 
 56
 "considered to be a shotgun type of disclosure which has
 
 
 57
 very generally suggested possible substituents which would
 
 
 58
 not lead one skilled in the art to applicant's compounds."
 
 
 59
 ... Heymes contends that one skilled in the art would not be
 
 
 60
 led to the compounds within the count because there is no
 
 
 61
 description of any species falling within the count.
 
 
 62
 The Board rejected this contention. After a careful analysis, the Board found that the specification would lead one skilled in the art, upon following a few simple steps, directly to the compounds of claim 119. The first step of the Board's analysis was to note that formula IIIh of the specification depicts a generic structure which is similar to the structure of the compounds in claim 119. The only substantive difference is that the exact composition of atoms attached to the nitrogen-oxygen moiety (R(2) in formula IIIh) is described in generalized terms.
 
 
 63
 In its second step, the Board noted that the selection of an appropriate R(2) substituent can properly be limited to the seven preferred examples listed on page 20 of the application. In its final step, the Board pointed out that the selection of R(2) is further narrowed if one considers the working examples. The Board found that six different types of R(2) substituents are used in the working examples and that four of the six types are within Takaya's claim 119. The Board concluded that "one following the Takaya disclosure would necessarily recognize that the compounds of claim 119 were disclosed as a combination that might be selected if desired, i.e., the message would be conveyed that Takaya invented the compounds of claim 119."
 
 
 64
 Heymes contends that the Board made certain mathematical errors in calculating the precise number of the different types of R(2) substituents disclosed. Heymes argues that 9 rather than 7 preferred examples of R(2) are disclosed in the Takaya specification at page 20, and that only 2 of these 9 preferred examples are within claim 119. Takaya admits that the Board erred, but asserts that the error was harmless.
 
 
 65
 We do not find the error to be critical. The precise number of the preferred R(2) substituents is simply not the issue. Rather what is important is that formula IIIh, when read in light of the specific preferences listed for the R(2) substituent, constitutes a description of a very limited class of compounds. See In re Petering, 301 F.2d 676, 681 (CCPA 1962). Contrary to Heymes' suggestion, this is not a case in which the specification is open-ended and literally discloses an undue number of compounds from which one skilled in the art must select in order to obtain the compounds of claim 119.
 
 
 66
 We conclude that the Board correctly traced the sequence of steps that one skilled in the art would follow in reaching the compounds of claim 119. The analysis the Board used in so concluding, particularly in focusing on preferred examples, is one that we have previously endorsed. As our predecessor court stated in Prutton v. Fuller, 230 F.2d 459 (CCPA 1956):
 
 
 67
 The question as to whether an application forms a proper support for a claim to a composition which is not specifically disclosed, but which falls among compositions suggested by general language in the application is one which must be determined largely by the particular circumstances of each case. The determining factor is whether the application would fairly suggest to the skilled worker in the art the particular composition claimed, or whether the desirability of that composition could be ascertained only by extensive experimentation. As we noted in In re Prutton, supra, the indication or lack of indication of a preference for the composition, in the application disclosure, is an important factor to be considered in making the determination, since anyone attempting to carry out the disclosure of an application would logically begin with the preferred examples given.
 
 
 68
 230 F.2d at 463.
 
 
 69
 Our role as an appellate court is not to substitute our technical assessment for that of the Board, but to assess the soundness of the Board's determination by examining the reasoning process the Board employed. Heymes has not demonstrated that the Board erred in its analytical approach or in the conclusion it reached based on its analysis.