28 C.C.P.A. (Patents)

### PRAHL et al. v. REDMAN.

Patent Appeal No. 4402.

Court of Customs and Patent Appeals.

Feb. 24, 1941.

Bailey & Larson, of Washington, D. C. (Jennings Bailey, Jr., of Washington, D. C., of counsel), for appellants.

Joseph N. Nielsen of New York City (Harold T. Stowell, of Washington, D. C., of counsel), for appellee.

Before Garrett, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Judge.

This is an appeal in an interference proceeding wherein the Board of Appeals of the United States Patent Office affirmed a decision of the Examiner of Interferences which awarded to appellee priority of the invention defined in the counts of the interference, eight in number.

The interference arises between a patent, No. 1,964,768, issued to appellants on July 3, 1934 upon an application filed June 13, 1933, and an application of appellee filed July 17, 1931, Serial No. 551,555.

Appellants' patent contains sixteen claims, and originally appellee copied all of them for purposes of interference. Eight of the claims so copied were rejected by the Primary Examiner as having no basis in appellee's specification as originally filed.

The interference was set up with respect to eight claims copied from appellants' patent and held allowable by the Primary Examiner in appellee's application.

Appellants moved to dissolve the interference upon the ground that appellee's disclosure did not support the counts. Appellee opposed said motion and moved to add to the interference the eight claims rejected by the examiner. Appellants opposed the addition of those counts upon the ground that they were not supported by appellee's disclosure. Appellants also moved to dissolve the interference upon the ground that appellee's specifically disclosed catalysts are inoperative.

The Primary Examiner granted appellant's motion to dissolve the interference, and denied appellee's motion to amend, holding that appellee was not entitled to make any of the claims of appellants' patent.

Upon appeal the Board of Appeals reversed in part this decision of the Primary Examiner, holding that appellee's application supported claims 1, 2, 3, 4, 9, 10, 11 and 12 of appellants' patent copied by appellee.

The interference was thereafter re-declared with the eight counts now before us, counts 1 to 4, inclusive, being counts of the original interference, and counts 5 to 8, inclusive, being counts added by appellee's amendments allowed by the Board of Appeals.

Counts 2 and 5 are illustrative of the counts in issue and read as follows:

"2. The process for producing aromatic hydroxy-compounds comprising the treatment of a ring-chlorinated aromatic hydrocarbon with steam at temperatures exceeding 350 ° C. in the presence of a neutral phosphoric acid compound of an alkaline earth metal as a catalyst."

"5. The process for producing aromatic hydroxy-compounds comprising the treatment of a ring-chlorinated aromatic hydrocarbon with steam at temperatures exceed-

ing 350° C. in the presence of tricalcium phosphate as a catalyst."

The subject matter of the issue is concisely defined in appellants' brief as follows:

"The interference relates to the manufacture of phenol or other aromatic hydroxy compounds by the treatment of chlorobenzene or other ring chlorinated aromatice hydrocarbons with steam in the presence of a catalyst. The process is carried out under such conditions that the different compounds taking part in the reaction are in a vapor state, or are in the form of gases.

"This broad concept as set forth is well known. The novelty claimed in the Prahl and Mathes patent resides in the discovery of a particular catalyst capable of producing a higher yield in the process than any heretofore known. The preferred catalyst set forth by Prahl and Mathes is a specific compound, tricalcium phosphate. The class of catalysts within which this falls, which is covered by the broad claims, is the compounds of phosphoric acid with elements of group 2 of the periodic system, particularly the neutral, alkaline earth metal compounds."

Inasmuch as the preliminary statement of appellants alleged conception of the invention subsequent to appellee's filing date, judgment was entered by the Examiner of Interferences awarding priority of the invention defined in the counts to appellee. Upon appeal the Board of Appeals affirmed this decision and appellants took their appeal to this court.

While the counts involve technical chemical combinations, the questions calling for decision by us are comparatively simple. They are:

1. The question of whether the counts are supported by appellee's disclosure, and

2. The operativeness of appellee's disclosure.

Upon the oral argument before us appellants' counsel conceded that counts 1 and 3 are supported by appellee's disclosure; therefore the question of appellee's right to make claims corresponding to counts 1 and 3 will not be further discussed.

Counts 5 to 8, inclusive, expressly specify tricalcium phosphate as the catalyst employed. Counts 2 and 4 specify as the catalyst "a neutral phosphoric acid compound of an alkaline earth metal as a catalyst." Without going into the technical meaning of this element, it is sufficient to say that it is conceded by appellants' counsel that if appellee discloses as a catalyst tricalcium phosphate, as specified in counts 5 to 8, inclusive, such composition is embraced within the element described as a catalyst in counts 2 and 4.

The Primary Examiner, in passing upon appellants' motion to dissolve and appellee's motion to amend, held that while appellee's disclosure is sufficient to teach the use of a calcium phosphate as a catalyst, it did not follow that a tricalcium phosphate was disclosed for the reason, as stated by him, that the term "calcium phosphate" covers three compounds, viz., monocalcium phosphate, dicalcium phosphate, and tricalcium phosphate. The Primary Examiner further held that, referring to an example in appellee's specification of the method of preparing a catalyst having a positive radical of copper nitrate and a negative radical of sodium phosphate, the substitution of calcium salt for the copper salt would not result in a tricalcium phosphate, as appellee contends, but in a dicalcium phosphate.

Upon this point the Board of Appeals, in reversing the decision of the Primary Examiner, after agreeing with the examiner that appellee discloses calcium phosphate, stated: " * * * This we believe is a disclosure of calcium phosphate. Normal calcium phosphate or tricalcium phosphate would be understood by the words 'calcium phosphate' in the absence of some limitation as to the acid condition of the phosphate." * * *

In its decision upon appellant's appeal upon the award of priority, the board stated:

"Appellants state that they wish primarily to reargue the right of Redman to make counts 5 to 8, inclusive, and their brief presents the same line of argument as on the prior appeal. We held specifically that Redman discloses the use of neutral calcium phosphate as a catalyst and stated why we arrived at this conclusion. The brief of appellants allege no error in our finding except that we should have relied on Redman's brief which would indicate that Redman prepared calcium phosphate in the same way as he did copper phosphate.

"It is our view that Redman discloses calcium phosphate as a catalyst. It is immaterial how he makes this compound or that if Redman follows the copper phos-

phate process he will not get neutral calcium phosphate. For that matter Prahl et al. actually used calcium phosphate which had been ignited for twenty-four hours at 500° C."

It will be observed that the Board of Appeals and the Primary Examiner concurred in holding that appellee's application discloses the use of calcium phosphate as a catalyst, but disagreed upon the question of whether the calcium phosphate disclosed was tricalcium phosphate.

 It therefore follows that the rule that concurring findings of the Patent Office tribunals upon findings of fact and upon technical questions will be adhered to by us unless manifestly wrong is applicable to the question of whether appellee's application discloses calcium phosphate, but is not applicable upon the question of whether tricalcium phosphate is disclosed in said application. However, before we would be warranted in reversing the decision of the board upon this point, we must be convinced that the board erred in its finding.

In the case of Daley v. Trube, 88 F.2d 308, 315, 24 C.C.P.A., Patents, 964, we said: "* * * In a case involving matters as highly technical as those which confront us here, it should be made clear to the court that the decision appealed from is erroneous, regardless of the fact that the Board's decision did not concur with that of the Examiner of Interferences."

█ We are not convinced that the board erred in holding that the disclosure of calcium phosphate should be regarded as a disclosure of tricalcium phosphate.

The chemical formula for tricalcium phosphate is $Ca_3(PO_4)_2$. In a publication entitled "Chemical Annual," by Van Nostrand, found in the record, we find the same formula given for "calcium phosphate," while different formulas are given for dicalcium phosphate, monocalcium phosphate, and pyro calcium phosphate.

In the "Chemical Encyclopaedia" by Kingzett, 4th Ed., we find the following on page 98: "Calcium Phosphate (tricalcium phosphate, $Ca_3(PO_4)_2$) is the most important of the phosphates of calcium, * * *."

In Funk & Wagnalls New Standard Dictionary we find the following: "calcium phosphate (Chem.) a phosphate of calcium, particularly the neutral phosphate ($Ca_3(PO_4)_2$ * * *."

Oxford's New English Dictionary defines calcium phosphate as follows: "calcium phosphate ($Ca_3(PO_4)_2$, phosphate of lime,. the chief constituent of bone ash."

It will thus be observed that the chemical formulas for tricalcium phosphate and calcium phosphate are identical, sustaining the view that a disclosure of calcium phosphate should be held to be a disclosure of tricalcium phosphate.

While the highly technical reasoning of the Primary Examiner that appellee does not disclose tricalcium phosphate, based upon an example set out in appellee's application where copper nitrate was used as the positive radical and sodium phosphate as the negative, radical, has been given consideration by us, we are not convinced that the board erred in holding that it is immaterial how appellee makes the compound here involved, or that if he follows the copper phosphate process he will not get neutral calcium phosphate. The method of making tricalcium phosphate is not involved in the counts. Its formula is well known, and if the board is correct in its holding that the disclosure of calcium phosphate, as that term is understood in the chemical art, is also a disclosure of tricalcium phosphate, it is immaterial how the compound is made. As hereinbefore indicated, we are not convinced that the board's views upon this question are erroneous.

As hereinbefore noted, appellants also moved to dissolve the interference as to counts 1 to 8, inclusive, of the interference as originally declared, but not including counts 5 to 8, inclusive, of the present interference, which were later added to the interference by amendment, upon the ground of inoperability of appellee's disclosure, and further moved for leave to take testimony in support of such motion. In their brief in support of such motion certain affidavits were attached.

In denying appellants' motion to dissolve, the Primary Examiner in his decision stated:

"The party Prahl and Mathes contend that the party Redman specifically discloses only aluminum phosphate, copper phosphate, and their admixture as catalysts, and that these catalysts are inoperative. The reasons for the alleged inoperativeness are that the prior art yield was 90% and that the allegedly more efficient catalysts of Redman must, therefore, produce yields

in excess of 90%. With their brief, Prahl and Mathes have presented affidavits to establish that Redman's specifically disclosed catalysts result in a yield of approximately 40–60% and that a yield lower than 75% is of no commercial value.

"However, these contentions of the party Prahl and Mathes are irrelevant. None of the catalysts specifically disclosed by Redman, and whose inoperativeness is urged, are covered by the interference issue. The alleged inoperativeness is not addressed to Redman's disclosure as a whole, which disclosure is a sufficient basis for the use of a magnesium or calcium phosphate as a catalyst. Accordingly, the motion is irrelevant to the issue of the interference, since any decision thereon would not affect Redman's right to make the counts of the issue, and must therefore be denied.

Upon motion of appellee the Primary Examiner struck from appellants' brief the affidavits above referred to.

In the decision of the board upon said motion to dissolve no reference is made to this action of the examiner, and inasmuch as appellants' reasons of appeal do not embrace this matter we will give it no further consideration.

The motion period in the interference as originally declared expired on May 28, 1936. On August 5, 1938, appellants moved to dissolve the interference with respect to present counts 5 to 8, inclusive, which had been added by way of amendment, upon the ground that appellee's application does not support the counts, and also moved to dissolve on the ground that the invention as described in appellee's specification, and particularly in the examples set forth therein, is inoperative and fails to produce any useful result. Appellants further moved for leave to take testimony to prove the allegations set forth in their motion. Said motion also included a request that the affidavits hereinbefore referred to, stricken by the Primary Examiner, be considered by the Patent Office. Attached to such motion was an affidavit by Prahl, one of the appellants.

In his decision upon priority, the Examiner of Interferences dismissed said motion to dissolve upon the ground that, the motion period having expired before said motion was made, and appellants not having opposed the admission of counts 5 to 8, inclusive, upon the ground of inoperativeness, but only upon the ground of lack of disclosure in appellee's application, appellants were not entitled to raise the question of inoperativeness with respect to counts 5 to 8, inclusive. The Examiner of Interferences also held that the motion for leave to take testimony was lacking in substance for the reason that any decision upon said motion would be irrelevant to the issue of the interference, no claim being made that if appellee discloses tricalcium phosphate, such disclosure, together with the disclosure of the other elements of the counts, would be inoperative.

After the award of priority of invention to appellee by the Examiner of Interferences, appellants petitioned the commissioner to review the proceedings in the interference, and, among other things, grant appellants leave to take testimony to prove inoperability of appellee's disclosure. In denying this petition the commissioner stated:

"During the interlocutory period petitioners moved to take testimony to show that the specific catalysts given as examples by Redman in his application are inoperative in the process covered by the claims then in issue, four of which claims are existing counts 1 to 4. After the interference had been re-formed by adding counts 5 to 8 and petitioners had been placed under the order to show cause they brought a similar motion as to these counts. In both of these motions petitioners admitted that the particular catalysts which they seek to prove inoperative by testimony are 'outside the issue of the interference.'

"Both the primary examiner and the examiner of interferences have correctly pointed out that testimony on the operativeness of such catalysts would be irrelevant to the right of Redman to make the claims in issue. The refusal by the examiner of interferences to permit petitioners to take testimony was therefore proper."

In its decision upon priority of invention the Board of Appeals called attention to the ruling of the commissioner that the refusal of the Examiner of Interferences to permit appellants to take testimony was proper, and declined to further specifically consider the matter, contenting itself with a general affirmance of the decision of the Examiner of Interferences awarding priority of invention to appellee with respect to all of the counts.

We are convinced, as were the Patent Office tribunals, that appellants were not

entitled to take testimony upon the subject of inoperativeness, for the reasons set forth by said tribunals.

In their reasons of appeal, error by the Board of Appeals is alleged in impliedly holding that the Examiner of Interferences had jurisdiction to dismiss a motion brought before the Primary Examiner, referring no doubt to appellants' motion of August 5, 1938.

██ Under rule 122 of the Rules of the Patent Office the Examiner of Interferences is expressly authorized to refuse consideration of a motion to dissolve if not brought within the time specified. Whether or not he is authorized to consider a motion for the purpose of determining whether it sets forth proper grounds for dissolution of interference, it is unnecessary here to determine. He was clearly right in dismissing the motion because not made within the interlocutory period when such motions may be entertained. In passing, we would observe that appellant's brief does not discuss this question.

For the reasons stated herein, the decision of the Board of Appeals is affirmed.

Affirmed.