SPERRY RAND CORPORATION, John
Presper Eckert, Jr., and John W.
Mauchly, Plaintiffs,

v.

BELL TELEPHONE LABORATORIES,
INCORPORATED, Defendant.

United States District Court
S. D. New York.

March 19, 1959.

**344**

Byerly, Townsend, Watson & Churchill, New York City, for plaintiffs. C. Blake Townsend, New York City, William D. Hall, Washington, D. C., Joseph B. Forman, Carroll G. Harper, New York City, of counsel.

Henry R. Ashton, New York City, for defendant. Harry R. Pugh, Jr., New York City, of counsel.

DAWSON, District Judge.

This is a motion by plaintiffs for leave to amend their complaint.

The action has been brought pursuant to the provisions of 35 U.S.C.A. § 146 by a party dissatisfied with the decision of the Board of Patent Interferences "on the question of priority."[*]

The papers show that this lawsuit involves the patentability of certain alleged inventions relating to an electronic numerical integrator and computer, known as ENIAC.

As appears from the complaint, plaintiff contends that its assignors, John P. Eckert, Jr., and John W. Mauchly, were the inventors of useful improvements in an electronic computer, known as ENIAC, for which they filed a patent application on June 26, 1947; that the defendant was the owner by assignment of the rights of one Samuel B. Williams in and to an invention for an electronic computer for which he had filed application for a patent on April 23, 1948; that the United States Patent Office declared an interference between these applications on May 1, 1952 and defined the issue of the interference, which is set forth verbatim in Paragraph 8 of the complaint; that the matter then went before the Board of Patent Interferences of the United States Patent Office and in a decision dated September 29, 1955 that Board awarded priority of invention to Samuel B. Williams, defendant's assignor. The complaint alleges that the plaintiffs are dissatisfied and aggrieved with the decision of the Board of Patent Interferences on the question of priority. They allege that plaintiffs are entitled to have priority awarded to them and to have a patent issued to them or to their assignee. They seek a judgment that plaintiffs Eckert and Mauchly were the true, original and first inventors of the invention set forth in the count of the interference and that their assignee is lawfully entitled to a grant of Letters Patent for the invention and a decree that the Commissioner of Patents issue to the assignee of said plaintiffs Letters Patent containing the claims corresponding to the counts of the interference.

No appeal was taken by the plaintiffs from the determination of the Board of Patent Interferences to the United States Court of Customs and Patent Appeals. Instead they relied upon the alternative relief afforded by § 146 of Title 35 U.S.C.A. which apparently entitles them to a trial de novo.

The action was instituted by the plaintiffs on November 25, 1955. It has been assigned for all purposes, including trial (which the parties estimate will take many months) to Judge Dawson. Now, at this late date, the plaintiffs bring on the instant motion for leave to amend their complaint. The proposed amendment to the complaint would make additional allegations to support the contention of the plaintiffs that the defendant was not entitled to a patent on the proposed invention, the essence of which allegations is "that the disclosures of such applications [of the defendant] were and are wholly inoperative and void and therefore contain no disclosure of any subject-matter defined in the counts of the interference * * *; that the disclosures of said applications are incom-

---

[*] Title 35 U.S.C.A. § 146 provides in the first sentence thereof: "Any party to an interference dissatisfied with the decision of the board of patent interferences on the question of priority, may have remedy by civil action, if commenced within such time after such decision, not less than sixty days, as the Commissioner appoints or as provided in section 141 of this title, unless he has appealed to the United States Court of Customs and Patent Appeals, and such appeal is pending or has been decided * * *."

plete, insufficient and inadequate to inform those skilled in the art how to practice the inventions of the counts herein in issue; that because of the aforesaid inoperativeness of the disclosures of such applications, neither the defendant, nor its assignor is entitled to the benefit of any filing date of such applications; that neither the defendant nor its assignor ever made any reduction to practice, whether actual or constructive, of the subject matter of the counts; and that the plaintiffs herein are entitled to prevail and have judgment in this action upon the basis (among others) of the filing date of the application of plaintiffs Eckert and Mauchly."

We have therefore a situation where the parties seek by amendment of the complaint to raise an issue not of the "priority" of the invention but rather of the "patentability" of the invention of one of the parties. This latter issue is raised by the contention of one of the parties that the disclosures of the defendant were "inoperative" and that therefore in any event neither the defendant nor its assignees would have been entitled to a patent. Of course, if a device is inoperative it would not have been patentable and thus any question of priority would have been meaningless. The question which this Court has to decide on this motion is whether this issue may be raised at this point in this long proceeding by an amendment to the pleading.

A determination of this question requires some consideration of the procedure in the Patent Office and the rules which regulate that procedure.

██ The processing of a patent application by the Patent Office is ordinarily an ex parte proceeding. However, when two applications are filed by two or more parties claiming substantially the same invention, a proceeding is necessary to determine which of the two parties is entitled to priority. This proceeding, which is in the nature of an adversary proceeding between the parties, is called an "interference." See Walker, Patents (Deller Ed.) § 189.

The rules of the Patent Office provide the procedure for a declaration of interference, the definition of the issues on the interference, the determination of the issue and for appeals therefrom. See Patent Office Rules (37 C.F.R. §§ 1.201 to 1.286, 35 U.S.C.A.Appendix). The initial determination as to whether an interference exists is made by the Patent Office. If it determines that interference does exist the Office suggests to the parties a definition of the claim, and the language of the counts of the interference, which are "such claims as are necessary to cover the common invention in the same language." Rule at § 1.203. This was done in the instant case.

The rules then provide that a party may move to dissolve the interference on various grounds, one of which is "that the claims forming the counts of the interference are not patentable, or are not patentable to a particular applicant." Rule at § 1.232. The examiners consider the contentions and if they conclude that the moving party is right the interference is dissolved. Under the Rules of the Patent Office such moves have to be made within a specified period of time, and in the instant case the moving party asked for and received a three month extension of the time within which to make such motion. However, the moving party did not move to dissolve the interference or raise the question of patentability or inoperativeness during the proceedings in the Patent Office.

The interference proceeding in the Patent Office therefore proceeded and, after having heard the evidence, that office determined the issue of priority. No appeal was taken by the losing party; but this action was started, which is in the nature of an action de novo.

██ The Rules of the Patent Office, which have the force of law, provide that the issue of patentability of a claim may not be raised unless the party seeking to raise the point has duly presented and prosecuted a motion in the interference proceeding for the dissolution of the interference upon such ground, or shows good reason why such motion was not

presented and prosecuted. Rule § 1.258. This is for the reason, as stated in the rule, that the question "of patentability of a claim * * * will not be considered in the decision on priority."

■ It is well settled that unless the issue of inoperativeness or unpatentability has been raised on a motion to dissolve an interference the Patent Office will not consider such issues in determining the issue of priority in an interference proceeding. As stated in Application of Rogoff, D.C.M.D.Pa.1951, 95 F. Supp. 467, 469:

> "Having failed to file a timely motion to dissolve the Interference on the basis of 'inoperativeness', under Rule 258 of the Rules of Practice of the United States Patent Office, Petitioner is not entitled to raise non-patentability because of inoperativeness at the final hearing. Petitioner is limited to the contentions which he made in the motion to dissolve the Interference."

This same rule is followed by the Court of Appeals for the District of Columbia in appeals from decisions of the Commissioner of Patents in interference cases.

In Lecroix v. Tyberg, 1909, 33 App. D.C. 586, the court stated:

> "Neither should we be called upon in this proceeding to determine the patentability of the invention. That is a question to be determined by the Patent Office." At page 592.

In Prahl v. Redman, 1941, 117 F.2d 1018, 28 CCPA 937 the defendant during interference proceedings in the Patent Office, but after the time had expired for making motions to dissolve the interference, moved to dissolve the interference on the ground of inoperability of his opponent's disclosure. The Primary Examiner denied the motion on the ground, among others, that the motion period had expired. The Court of Customs and Patent Appeals in affirming held that he was right in dismissing the motion because it was not made within the time required by the rules.

Plaintiffs in this action now contend that the original disclosure as contained in the Williams application is inoperative and therefore does not contain a disclosure of any subject matter defined in the counts of the interference. However, in an interference proceeding each party accepts and adopts the language of the counts of the interference as his own claim and as supported by the disclosure in his application. The disclosure of each applicant thereupon merges with the counts of the interference. If a party believes his opponent's disclosure is not descriptive of the invention, or is inoperative and therefore does not support the counts of the interference, he may object thereto and move to dissolve the interference. If the Patent Office finds this to be a valid objection, the interference is dissolved.

■ Although the plaintiffs requested and received a three month extension of this motion period, they failed to raise the issue of inoperativeness in the Patent Office. By not raising this issue plaintiffs thereby elected to accept the definition of the disclosure as set forth in the counts of the interference. Having so elected to accept the disclosure of their opponent as being the same as that set forth in the counts of the interference and merged with it, the plaintiffs may not now complain that the disclosure is inoperative or does not support the counts, while at the same time contending that the disclosure as merged in the counts is sufficient to warrant the issuance of a patent to them.

There had been conflicting views in the various Courts of Appeals concerning the duty of the district courts to adjudicate the questions of patentability in an interference proceeding. As a result the Supreme Court granted certiorari in Sanford v. Kepner, 1952, 344 U. S. 13, 73 S.Ct. 75, 97 L.Ed. 12 in order to settle this question. The Court there held that where a district court, in a suit under Rev.Stat. § 4915, 35 U.S.C. § 63 (1946), decides the factual issue of priority against an applicant who has been finally denied a patent because of a

Patent Office decision against him in an interference proceeding, the applicant has obtained the full remedy the statute gives him and the district court is not compelled to adjudicate patentability at the instance of the applicant.

Thus the Supreme Court has set forth the position to be taken and has indicated that the district court need not adjudicate the issue of patentability.

This view is further supported in Glass v. De Roo, 1956, 239 F.2d 402, 44 CCPA 723, where in an appeal from an interference proceeding the Court of Customs and Patent Appeals held that it could not consider the question of patentability. The determination there was based in part on an interpretation of the statute (35 U.S.C.A. § 141) conferring jurisdiction on that court. Section 141 is similar to § 146, except that § 141 gives jurisdiction to appeal to the Court of Customs and Patent Appeals while § 146 gives jurisdiction to bring a suit in the district court. Section 141 reads in part as follows:

"* * * A party to an interference dissatisfied with the decision of the board of patent interferences on the question of priority may appeal to the United States Court of Customs and Patent Appeals * *."

In the Glass case, the court interpreted the inclusion of the phrase "on the question of priority" to limit the scope of the appeal to the question of priority. It is significant to note that this phrase was not included in the previous statute, but was added in the 1952 revision. On this point the court in the Glass case states:

"* * * It was because of the frequent misunderstanding of the scope of the appeal to this court in patent interferences that the words 'on the question of priority' were inserted in 35 U.S.C. (1952) § 141, with a view to clarifying the situation." Glass v. De Roo, 239 F.2d 402, at page 404.

In support of their contention that the issue of operativeness can now be raised for the first time, plaintiffs rely heavily on Curtiss Aeroplane & Motor Corp. v. Janin, 2 Cir., 1921, 278 F. 454. In that case it is difficult to determine from a reading of the opinion of the circuit court whether the issue of inoperativeness had been considered by the Patent Office, and if not, whether a good reason was shown for the delay in raising the issue. However, from an examination of the opinion in the lower court (D.C., 267 F. 198) it appears that this issue was considered in the Patent Office (at pages 206, 210). Therefore, the case is distinguishable in that there the issue of inoperativeness was not being considered in the district court for the first time.

While a trial in the district court is not in the nature of an appeal, but rather a de novo proceeding, without prejudice to the right of the parties to take further testimony, the new testimony must be in support of contentions already fully made. Shell Development Co. v. Pure Oil Co., D.C.D.C.1953, 111 F.Supp. 197, 199, as stated in the Shell case,

"New evidence may be received *which strengthens contentions already fully made and supported by testimony before the Patent Office,* where there has been no suppression, bad faith, or gross negligence on the part of the party offering it * *." [Emphasis added]

In the instant case, the issue of inoperativeness has never been considered or supported by any testimony before the Patent Office. The subject of the invention is an extremely complicated electronic computer involving very advanced electronic circuitry and theory. The Williams application, which plaintiffs are now belatedly seeking to allege to be inoperative, consists of 41 sheets of drawings and 168 pages of written material. The granting of the motion to amend would tremendously increase the necessary discovery and needed preparation for trial, as well as increase the length of the trial itself, estimated by plaintiffs to take as much as six to eight

**348**

months. If the question had been raised in the Patent Office, as it could have been, this Court would then have had the benefit of the assistance of a decision by the experts of the Patent Office on the matter of inoperativeness, which is particularly within their province. If the issue had substance to it, the interference could have been dissolved and the question of priority of invention would have become academic.

Because of the patent which was issued to Williams in 1950, the actual disclosure of the claims made by Williams was available to plaintiffs from 1950. Therefore seven years had passed from the time plaintiffs first had an opportunity to learn of the inoperativeness of the Williams disclosure to the time plaintiffs decided to allege inoperativeness. Five years had passed from the time of the declaration of the interference itself in 1952. Yet the only reason given by the plaintiffs for not raising the issue of inoperativeness earlier is that "plaintiffs had no knowledge or reasonable means of knowledge concerning the defects." No further explanation is given for the poor showing of diligence in questioning the operativeness of the Williams disclosure, despite the length of time the information was available to them. Indeed, it would seem that the plaintiffs first decided to question the operativeness of the Williams disclosure as an afterthought, subsequent to their losing the interference in the Patent Office and approximately one year after instituting this action. Under these circumstances plaintiffs do not state sufficient reasons for their delay in raising this issue.

The Sanford decision, supra, is discussed in 41 Geo.L.J. 272, where the following is stated:

> "It would appear that the decision in the instant case gives an applicant the maximum protection for his application, and at the same time is least likely to work an undue hardship on his adversary. Further, it prevents one of the parties claiming the invention from attempting to

prove a lack of invention when he loses on the issue of priority."

To allow this new issue to be injected into the case under these circumstances would be an invitation for litigants to raise the issue of "operativeness" anew in every case where a party is dissatisfied with the decision of the Board of Patent Interferences. It would encourage parties to trade on the "ignorance" of the court in complicated technical matters with the hope that a judge, untrained in the intricacies of technology, might find inadequate disclosure or inoperativeness.

 Therefore, where the issue of the operativeness of the Williams application was not raised by the plaintiffs in the Patent Office, the issue cannot be raised now in this proceeding. Accordingly the motion for leave to amend the complaint is denied. So ordered.